CROSS *v.* DETROIT CITIZENS' STREET RAILWAY CO.

STREET RAILWAYS—FIGHT ON CAR — PROTECTION OF PASSENGER—
NEGLIGENCE—QUESTION FOR JURY.

An electric car in which plaintiff was the only passenger was boarded while in motion by three disorderly persons, who continued a fight begun on the street. Plaintiff screamed to the conductor to stop the car, and ran to the rear platform, where she fell and was injured. In an action against the company, plaintiff testified that the conductor stood at the front of the car, and paid no attention to her request. A third person, who claimed to have observed the scene from without, testified that the conductor's position was as stated by plaintiff. Defendant introduced testimony tending to show that the conductor was engaged at the time in an attempt to disarm one of the combatants, and that he called to the motorman to stop the car, but the latter was forcibly prevented from doing so. *Held,* that the testimony was in conflict as to whether defendant's employés used reasonable efforts to protect the plaintiff, and that the question was for the jury.

Error to Wayne; Hosmer, J. Submitted January 4, 1899. Decided May 9, 1899.

Case by Cora E. Cross against the Detroit Citizens' Street Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*Brennan, Donnelly & Van De Mark*, for appellant.

*Thomas Hislop*, for appellee.

MONTGOMERY, J. The plaintiff recovered a verdict in an action for negligence, and injuries received in falling from defendant's car while a passenger. The negligence imputed to the defendant by the declaration is the failure to prevent certain rough characters boarding the car in which plaintiff was a passenger, and the failure to stop the car to permit plaintiff to alight when the persons

who had been admitted to the car engaged in a fight. The testimony on the part of the plaintiff tended to show: That she boarded a Jefferson-avenue car late in the evening, intending to alight at Townsend street, a few blocks east of Field avenue. She was the only passenger in the car. That after leaving Field avenue, and while the car was in motion, a man boarded the car, pursued by two others. That the man who first entered was knocked down by the two others, and a fight ensued in the middle of the car. The plaintiff screamed, frantically, "Let me off!" That she got up from her seat and went to the rear platform, and that this is the last she knew, until she was thrown from the car, and received the injuries complained of.

The circuit judge charged the jury:

"It is contended on behalf of the plaintiff that, after leaving Field avenue (and there is no question about that fact), disorderly persons got upon the car, and that at that juncture (I will not pretend to say the exact place) she called upon the conductor in charge of the car to stop the car, so that she might alight. Indeed, she desired, the testimony shows, to get off at Townsend avenue. Her testimony is that no attention was paid to her request. Her testimony is that the conductor stood in the front part of the car, and that no effort was made to stop the car. Now, gentlemen of the jury, all I may say is— I can say, in that regard, if that is true,— if you find from the testimony which has been adduced before you that the conductor was guilty of negligence in failing to stop the car,— then, unless you find that the plaintiff in this case was by her own conduct guilty of contributory negligence, then, and under those circumstances, the plaintiff would be entitled to recover such damages as would compensate her for the injuries she has sustained.    *    *    *

"On the part of the defendant it is contended that the conductor was endeavoring to suppress the disorder that then existed in the car. It is contended on the part of the defendant that, both from the testimony of the motorman and the testimony of the conductor, that he heard her request or cry, whatever it may have been, to stop the car, and that he called to the motorman, who heard him, to stop the car. Well, obviously, gentleman, if this is so,

there is no negligence in this regard; that is, on the part
of the conductor. Now, you have heard the testimony of
the motorman. The motorman has testified in this case
that he heard the call of the conductor to stop the car, and
proceeded to do so, but that he was actually prevented,
I think, by application of some force— I think it was a
bar placed in such a manner, as he says, between his legs
(the switch bar), that, while he turned off the controller,
he was unable to apply the brake. Well, now, gentlemen,
as I have said in the argument (I think, in reply to some
question of the counsel, or some argument of the counsel;
I do not exactly recall the juncture now), obviously a
street-car railway company is not an insurer of the safety
of its passengers; and if you find that, by reason of dis-
orderly proceedings in the car, the motorman was unable
to apply the brake, then, under those circumstances, hav-
ing heard the call of the conductor, I charge you that the
company is not at fault, because, as I said before, the
company is not an insurer of the safety of the passenger,
and all that can be expected of the company in that regard
is that they shall use due diligence in the conduct of their
cars to protect their passengers, but they are not liable for
any assault of disorderly persons or any other public
enemies.   *   *   *

"I am asked to charge you at this time that if you find
the conductor did not promptly try to stop the car, but
only did so after he had been engaged in the effort to ob-
tain the revolver,—that, if he acted promptly, the motor-
man could have stopped it at the time, but could not have
done so later on,—the defendant was guilty of negligence
in this respect. Well, gentlemen, I decline to give that
request. As I say, it depends upon whether you believe
the testimony adduced by the plaintiff, or believe the
testimony adduced by the defendant. If you believe the
testimony adduced by the plaintiff, there was no effort
made to stop the car at the time she cried. If you believe
the testimony adduced by the defendant, there was that
effort, but it was ineffectual, simply and solely by reason
of the inability of the motorman to operate the brake. I
am not prepared, in this case, to lay down the abstract
proposition that it might have been stopped, considering
the exceedingly limited space of time in which necessarily
this took place,—that it might have been stopped,—or that
it was the duty of the conductor, instantly on the appear-
ance of these parties, to stop the car prior to the cry. In

fact, gentlemen of the jury, I am not prepared to say but that it may have been simultaneous, or practically simultaneous. As I said before, you have heard the testimony. I have pointed out what negligence there is in that regard, if there be negligence in the matter, but that is a question for you, and not for me; and I think I have covered all that it is necessary for me to say."

It is contended by defendant's counsel that these instructions were erroneous, for the reason that the evidence, without any substantial dispute, shows that the conductor and motorman did all in their power to stop the car after being called on to do so.

It is not disputed that it was the duty of defendant's servants to use reasonable efforts to protect the plaintiff from injury by the lawless ruffians who had boarded the car; nor do we understand that any contention is made that the conductor was not in fault, if he failed to attend to plaintiff's demand to be let off, if he was in position to comply with that request. But it is insisted that the evidence shows that the conductor was engaged in trying to disarm one of the men, who had drawn a revolver, and that, when the plaintiff demanded to be let off, he (the conductor) called to the motorman to stop the car, that the motorman attempted to do so, and that he was prevented from doing it by some one who boarded the car in front, getting in his way so that he could not apply the brake. If these facts were undisputed, as contended by defendant's counsel, there would certainly be much force in the contention that the conductor was performing his duty as he saw it, with coolness and bravery. We are not, however, able to say that this testimony is undisputed. Mrs. Emma Bates testified that she lived at 1497 Jefferson avenue, the second door east of Sheridan avenue, which is the first street east of Field avenue, and saw the car pass her place; saw the three men struggling in the middle of the car, and saw the conductor standing at the front end of the car, at the vestibule door, right in the doorway; that she saw him still in this position after

they had passed Townsend street, the street next east of Sheridan avenue. The plaintiff testified that the conductor stood at the front of the car, just at the door in the vestibule,— just within the door on the left-hand side of the doorway as the car was going. She further testified: "He did not say anything to me when I screamed and wanted to be let off,— never moved." Defendant's counsel quote this last statement, and insist that it does not contradict the conductor's testimony that he called out to the motorman to stop the car and let the lady off. But the conductor's testimony is that he was not occupying this position at all, but struggling with the desperadoes in the middle of the car, at the time he called to the motorman. But a more complete answer to the contention is that the plaintiff further testified that, when she screamed to be let off, the conductor paid no attention. This was certainly untrue, if he responded to her request by ordering the motorman to stop the car. We think there was testimony to support plaintiff's case, and that the charge fairly presented the correct theory of the case to the jury.

The other questions presented are sufficiently answered by the above discussion.

The judgment is affirmed.

GRANT, C. J., MOORE and LONG, JJ., concurred. HOOKER, J., did not sit.